IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MANUEL HIERRO,

    Plaintiff,

v.                                        CASE NO. 5:09-cv-00068-RS -GRJ

DR DANIEL CHERRY, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants Cherry and Tran's Motion For Summary Judgment (Doc. 107). Plaintiff has filed a response in opposition. (Doc. 119.) Accordingly, this matter is ripe for review. For the reasons discussed below, the Motion for Summary Judgment (Doc. 107) is due to be **GRANTED.**

## I. BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment violations related to medical care he received while in the custody of the Orange County Jail and Florida Department of Corrections. Prior to his incarceration, Plaintiff claims he had been diagnosed with HIV and had triple bypass heart surgery and four herniated discs for which he was being treated successfully. Plaintiff arrived at the Orange County jail in May 2007, where he alleges Dr. Sandra Hodges refused to provide medications or treatment.[1] Plaintiff was transferred to Florida Department of

---

[1] This Court directed service on a Dr. Sandra Hodges at the Orange County Jail, but the
(continued...)

Corrections custody in June 2007, and he complains that while at the Reception Medical Center Dr. Can Tran failed to prescribe him any medication, did not order examination by specialists and left Plaintiff untreated for 60 days until transferring to Holmes CI. Plaintiff contends that he had a heart attack shortly after his arrival at Holmes CI (Doc. 119, p. 2).[2] Plaintiff was subsequently transferred to Apalachee CI, where he alleges, among other things, that Dr. Daniel Cherry refused to prescribe Crestor as indicated by cardiologist Dr. Benjamin Olliff.

In response to a previous motion for summary judgment filed by Dr. Cherry and Nurse Celeste MacDonald (Doc. 46), this Court granted summary judgment on all claims in favor of MacDonald and all claims but one in favor of Dr. Cherry (Doc. 72). The remaining claim in dispute against Dr. Cherry involves the issue of whether he was deliberately indifferent for not adhering to the recommendation of Dr. Oliff that Plaintiff be prescribed and/or maintained on a statin to manage his coronary artery disease.

Plaintiff initiated this lawsuit on March 11, 2009 (Doc. 1), suing Defendants in their individual and official capacities. Plaintiff seeks compensatory damages in the

---

[1](...continued)
Orange County Jail returned the documents as "Not deliverable/Unable to Forward." (Doc. 59). Plaintiff moved the Court to compel the Orange County Jail to provide an address for Dr. Hodges (Doc. 65). This Court denied Plaintiff's motion to compel, noting that an attempt by the Court to locate Dr. Hodges found that there is no health care professional licensed in Florida with the name of Sandra Hodge or Hodges. Plaintiff has provided no additional information to assist the Court in locating Dr. Hodges. (Doc. 66).

[2] This Court has previously determined that "[t]here is absolutely no medical evidence that Plaintiff suffered any heart attacks while in the custody of the Florida Department of Corrections." (Doc. 72, p. 14). Despite this Court's notice of Plaintiff's "gross exaggerations" of his condition, Plaintiff persists in representing to the Court that he suffered a heart attack shortly after arriving at Holmes CI. (Doc. 72, p. 14; Doc. 119).

amount of $750,000 from each defendant a punitive damages award of $750,000 from each defendant. (Doc. 1, p. 23).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth,* 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## III.  DEFENDANTS' RULE 56(e) EVIDENCE (Docs. 107-108)

A.  Inmate Movement (Exh. A)

Plaintiff was at RMC Main Unit from 6/11/07 until his transfer to RMC West Unit on 6/20/07.  He was transferred to Holmes CI on 7/17/07.  Plaintiff was then transferred to Apalachee CI on 7/24/07.  His stay at Apalachee has been punctuated by numerous temporary transfers to and from RMC.

B.  Medical Records (Exhs. B-Q)

An intake assessment was conducted at the RMC Main Unit upon Plaintiff's arrival on June 11, 2007 by Kyle Lewis.  (Exh. C).  It was noted that Plaintiff had a triple bypass in 2004 that was last treated in May 2007; high blood pressure last treated in May 2007; HIV positive as diagnosed in 2000 with the last treatment occurring seven months prior.  Plaintiff's hospitalization history included the triple bypass in 2004 and collapsed lungs in 2006.  (Exh. C).  Dr. Tran signed the intake assessment on June 12, 2007.  Plaintiff was given a pneumonia vaccine on June 11, 2007.  (Exh. D).

Dr. Tran examined Plaintiff on June 13, 2007.  He noted that Plaintiff was diagnosed with HIV in 2004 and reported treatment with Truvada, Sustiva, and two other medications.  Plaintiff told Dr. Tran that he was not given any medication for his HIV or heart problems for the past 40 days while in the county jail.  Dr. Tran requested lab tests and records from Plaintiff's outside doctor, with directive to return in 10 days for prescriptions.  Dr. Tran prescribed nitroglycerin, Motrin, aspirin, and hemorrhoidal ointment.  Dr. Tran issued a bunk pass and a shaving pass.  Dr. Tran also ordered that Plaintiff's blood pressure be checked and that labs be repeated in one month.  Dr. Tran

noted that Plaintiff might have a cardiology consult after his medical records were received (Exh. F).  Dr. Tran saw Plaintiff again on June 19, 2007, when he reviewed his lab results and scheduled him to return to the clinic on June 23, 2007 for follow up, medications, and a cardiology consult.  (Exhs. I & R).  Plaintiff was transferred to RMC West Unit on June 20, 2007, where he remained until his transfer to Holmes C.I. on July 17, 2007.  (Exh. A).

On July 24, 2007, Plaintiff was transferred to Apalachee C.I., where Dr. Cherry served as the Chief Health Officer.  Dr. Olliff's consultant's report of February 7, 2008 noted that Plaintiff "must be maintained on treatment with statins to lower his LDL to 70 unless he cannot take them."  (Doc. 46, Exh. T2).  Pharmacy records show that Dr. Olliff prescribed Crestor 20 mg on February 7, 2008.  Plaintiff received 30 tablets, which were refilled on March 5, 2008, April 1, 2008, and May 7, 2008.  (Exh. M).  Dr. Olliff increased the prescription to Crestor 40 mg on May 14, 2008, and Plaintiff was given 15 tablets.  Plaintiff received 30 tablets of Crestor 40 mg on July 11, 2008, August 11, 2008, and September 8, 2008.  (Exh. M).

In October 2008, Crestor was removed from the Department of Corrections formulary and replaced with another statin, Lovastatin (Mevacor).  (Exhs. R & S).  Dr. Cherry and Dr. Frank Johanson, Clinical Director of the Department of Corrections, attest that inmates taking a particular medication that is removed from the formulary are given a similar medication, but if their medical condition is subsequently uncontrolled, the treatment provider can submit a Drug Exception Request for a different medication.  (Exhs. R & S).  After Crestor was removed, Plaintiff began receiving Lovastatin in

October 2008. (Exh. M). In November 2008, Lovastatin was removed from the Department of Corrections formulary and replaced with Pravastatin. (Exh. R). Plaintiff was maintained on Pravastatin from November 2008 through March 2010, at which time he was switched to Crestor. (Exh. M).

In addition to maintaining a treatment with statins throughout the relevant time period, health care providers also monitored Plaintiff's cholesterol with lab testing. (Exh. N).

### C. Affidavit of Dr. Frank Johanson (Exh. R)

Dr. Johanson is the Clinical Director for the Florida Department of Corrections. After reviewing Plaintiff's medical records, Dr. Johanson concluded that Plaintiff "received the appropriate assessments and evaluations during his orientation and new commitment processing period." Dr. Johanson also concluded that treatment providers at Apalachee C.I. continually monitored Plaintiff's condition and prescribed a statin to lower his LDL cholesterol and raise his HDL cholesterol. Dr. Johanson noted that Plaintiff's high triglycerides could be attributable to factors such as Plaintiff's history of antirretroviral medications, obesity, high blood pressure, smoking, and diet non-compliance. Dr. Johnson concluded that "[t]here is no indication that the use of a particular statin worsened Hierro's heart condition." (Exh. R).

### D. Affidavit of Dr. Daniel P. Cherry (Exh. S)

Dr. Cherry was the Chief Health Officer at Apalachee C.I. during the time period relevant to Plaintiff's allegations. Upon reviewing Plaintiff's medical records, Dr. Cherry came to a similar conclusion as Dr. Johanson, that Plaintiff was appropriately

*Case No.: 5:09-cv-68-RS-GRJ*

maintained on a statin since it was prescribed by Dr. Olliff and other factors related to lifestyle and medical history could contribute to high triglycerides. (Exh. S).

### E.  Affidavit of Dr. Can Tran (Exh. T)

Dr. Tran noted that after reviewing Plaintiff's lab results on June 19, 2007, he "determined that it would be of greater value to the patient to await his outstanding laboratory results and outside medical records prior to prescribing any additional medications so that the best course of treatment could be determined." Dr. Tran noted that Plaintiff could not relay all specific medications had previously been prescribed and therefore he felt it would better to wait for outside medical record, lab work, and a cardiology consultation so the correct medication could be prescribed. (Doc. 108, Exh. T).

## IV.  PLAINTIFF'S RESPONSE

Plaintiff claims that material facts are in dispute, thereby precluding summary judgment: specifically, (1) whether Dr. Cherry failed to follow the instructions of Dr. Oliff; (2) whether Plaintiff actually received the medications as indicated in the Department of Corrections pharmacy records; (3) whether Dr. Tran had a duty to put Plaintiff on a hold for further evaluation by a cardiologist and to continue treatment after Plaintiff was transferred to RMC West.

### A.  Health Information Transfer Summary (Doc. 119, p. 14)

Orange County Corrections Health Services Department transfer summary noting that Plaintiff's current medications are Nitrostat .4 mg sublingual, that he has history of hypertension, coronary artery disease, and chronic back pain. The summary

also indicated that Plaintiff refused his blood pressure medication on May 29, 2007. (Doc. 119, p. 14).

B.  Answers of Defendant Tran to Plaintiff's Interrogatories (Doc. 119, pp. 15-18)

Dr. Tran attests that we would have given Plaintiff HIV/AIDS medications at the time of his followup appointment on June 25, 2007, even if outside medical records had not been received.  Dr. Tran attests that the warden and Chief Health Officer at RMC Main Unit and RMC West Unit are the same, and that RMC West Unit inmates are routinely taken to the RMC Main Unit for medical appointments.

C.  Defendant Tran's Responses to Request for Admissions (Doc. 119, pp. 19-21)

Dr. Tran admits that inmates can be kept RMC Main Unit if needed.  Dr. Tran admits that he did not fill out a cardiologist consult form for Plaintiff and did not prescribe a statin because he was awaiting results from a fasting lipid profile.  Dr. Tran admits that Plaintiff probably would not have been transferred to Holmes C.I. if there was a medical hold at the time of his transfer.

## V. DISCUSSION

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243

(11th Cir. 2003). A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'") (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); Chance *v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

**A. Dr. Cherry**

The only issue before the Court on this motion for summary judgment regarding Dr. Cherry is whether his alleged failure to follow the recommendation of a cardiologist regarding statin treatment constituted an Eighth Amendment violation. While failure to follow the recommendations of an outside consultant is not necessarily indifference, if there is some showing that the failure resulted in a less effective regimen, it may be. *See Morris v. Gay, 2007 WL 2917571 (S.D. Ga.)* (disagreement was over type of pain medication and there was explanation from the medical staff as to why they did not follow the consultant's recommendations).

The record shows that Dr. Oliff prescribed Crestor in February 2008, noting that Plaintiff "must be maintained on treatment with statins to lower his LDL to 70 unless he cannot take them." Though he prescribed Crestor, he noted that statins were essential, and though he prescribed Crestor, the record does not show that Dr. Olliff opined that Crestor was the only appropriate statin. (Doc. 46, Exh. T2). Plaintiff was maintained on treatment with statins throughout the times relevant to the complaint. (Exh. M). In Plaintiff's Response in Opposition to the motion for summary judgment, he suggests that the pharmacy records are not sufficient to show that he actually received the

medications as indicated. (Doc. 119, p. 3). However, Plaintiff offers nothing other than his conclusory allegations that the Department of Corrections should be required to offer signed receipts and that he did not receive Crestor despite records to the contrary. This is not sufficient to overcome the evidence in the record that shows Plaintiff was maintained on a statin after it was recommended by Dr. Olliff.

As Dr. Johanson and Dr. Cherry noted, there is no evidence that the use of a particular statin worsened Plaintiff's heart condition. (Exhs. R & S). Disagreements between Plaintiff and his treatment providers over a particular type of statin medication do not rise to the level of deliberate indifference. The Court, therefore, concludes based upon the record before the Court that there was no departure from the recommendation of Dr. Olliff and therefore there is no basis for Plaintiff's Eighth Amendment Claim. Accordingly, Dr. Cherry is entitled to summary judgment on this issue.

**B.  Dr. Tran**

Plaintiff alleges that Dr. Tran violated Plaintiff's Eighth Amendment rights by failing to put a medical hold on Plaintiff, prescribe certain medications, or refer Plaintiff to a cardiologist. Plaintiff was at RMC Main Unit for approximately 9 days, during which time Dr. Tran prescribed medications, ordered lab tests and outside medical records, scheduled followup appointments, issued shaving and bunk passes, and saw Plaintiff twice. Dr. Tran attests that medical holds are "placed only when patient has any specialty consultation. Such consultation should be Urgent, or life threatening, if not, any consultation should be initiated by the permanent institution." (Doc. 119, p. 16).

Plaintiff disputes Dr. Tran's decision to wait for outside records before prescribing additional medications. He also challenges Dr. Tran's decision not to place

a medical hold on Plaintiff.  The record shows that Dr. Tran provided treatment, including exam, testing, and medication during the nine days Plaintiff was under his care.  Such differences of medical opinion generally will not support a claim of deliberative indifference, and no egregious circumstances are alleged here that would necessitate a ruling to the contrary.  A purely medical judgment "that in hindsight. . .may not have been poor or even that it may have constituted negligence or medical malpractice does not elevate Plaintiff's claim to a tort of constitutional dimensions." *Pate v. Peel, 256 F. Supp. 2d. 1326 (N.D. Fla. 2003) (citing Harris v. Thigpen, 941 F. 2d 1495, 1505 (11th Cir. 1991))*.  Defendant Dr. Tran is, therefore, entitled to summary judgment in his favor.

## IV. RECOMMENDATION

Having carefully reviewed the record, this Court concludes that Plaintiff has failed to show how the alleged shortcomings in medical care were so deficient to arise to the level of an Eighth Amendment violation. Defendants Cherry and Tran are, therefore, entitled to summary judgment in their favor.

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion For Summary Judgment (Doc.107) should be **GRANTED** and the Clerk should be directed to enter final judgment in favor of Defendants Cherry and Tan.

**IN CHAMBERS**  this 24th day of August 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No.: 5:09-cv-68-RS-GRJ*